JCH7TONS

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          17 Cr. 569 (ER)

5   JAMES TONER,

6                 Defendant.

7   ------------------------------x
                                        New York, N.Y.
8                                       December 17, 2019
                                        10:45 a.m.
9

10  Before:

11                    HON. EDGARDO RAMOS
                                         District Judge
12

13                        APPEARANCES

14  GEOFFREY S. BERMAN
         United States Attorney for the
15       Southern District of New York
    BY:  OLGA ZVEROVICH
16       Assistant United States Attorney

17  RODNEY VILLAZOR
         Attorney for Defendant

18

19

20

21

22

23

24

25

                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

JCH7TONS

1        (In open court)

2        (Case called)

3        MS. ZVEROVICH:  Good morning, your Honor.  Olga

4   Zverovich for the government.

5        MR. VILLAZOR:  Good morning, your Honor.  Rodney

6   Villazor for James Toner, who is seated beside me.

7        THE COURT:  And good morning to you all.

8        This matter is on for sentencing.  You have reviewed

9   the presentence report last revised on May 1, 2019, prepared by

10  U.S. Probation Officer Robert Flemming, which includes a

11  recommendation.  I have also received the sentencing letters

12  submitted by Mr.Villazor dated December 9, 2019, which include

13  letters of Mr. Toner's family and friends.  And I have reviewed

14  the government's submission dated December 13, 2019.  Is there

15  anything else that I should have received or reviewed,

16  Ms. Zverovich?

17        MS. ZVEROVICH:  Nothing else from the government.

18        MR. VILLAZOR:  No, your Honor.

19        THE COURT:  Mr.Villazor, have you read the presentence

20  report and discussed it with your client?

21        MR. VILLAZOR:  I have, your Honor.

22        THE COURT:  And, Mr. Toner, have you read the

23  presentence report and discussed it with your attorney?

24        THE DEFENDANT:  Yes, your Honor.

25        THE COURT:  Are there any objections to the report

JCH7TONS

1    apart from the -- you can remain seated --

2              THE DEFENDANT:  Thank you, your Honor.

3              THE COURT:  -- apart from the role adjustment?

4              MR. VILLAZOR:  Your Honor, one.  Paragraph 24, the PSR

5    states that Mr. Toner created the call center in Costa Rica.  I

6    don't think there is any dispute that he did not create the

7    call center.

8              THE COURT:  Ms. Zverovich.

9              MS. ZVEROVICH:  Yes, your Honor, it should be changed

10   to same James Toner managed the call center in Costa Rica.

11             THE COURT:  That change will be made.

12             Now, concerning the role adjustment, Mr.Villazor, did

13   you wish to be heard?

14             MR. VILLAZOR:  Your Honor, I will largely submit on

15   the submission, our sentencing memo.  I think a straight

16   forward application of the application notes for a minor

17   participant applies directly to Mr. Toner's circumstances and a

18   minor role participant is warranted.

19             MS. ZVEROVICH:  Your Honor, the government also would

20   rest on its submission for the most part.  I think it's clear

21   that in this case a managerial enhancement applies because this

22   defendant was specifically responsible for managing an

23   important part of this fraudulent enterprise for a period of

24   six months.  The call center in Costa Rica was the place where

25   customers would call complaining and reporting fraudulent

JCH7TONS

1    activity on their credit card bills, and this defendant was

2    responsible for managing the employees who answered those

3    calls.  He was responsible for drafting the fraudulent scripts

4    that he and his employees used to deceive the complaining

5    customers.  So, it's clear that while he was not a leader of

6    the overall enterprise, he was a manager of this very important

7    portion of it.

8              THE COURT:  How many employees worked at the call

9    center?

10             MS. ZVEROVICH:  Your Honor, we actually don't know

11   that, which is one of the reasons why it's a two-level

12   enhancement and not one that calls for specific number of

13   people.  We do know there were employees but we do not know how

14   many.

15             THE COURT:  And you know that there was more than one

16   presumably.

17             MS. ZVEROVICH:  Yes, your Honor.

18             THE COURT:  And Mr. Toner managed that facility for

19   six months approximately?

20             MS. ZVEROVICH:  Yes, your Honor.

21             THE COURT:  Was he physically in Costa Rica during

22   that time?

23             MS. ZVEROVICH:  He was for at least a portion of it,

24   yes.  And we have e-mails showing that he was the one who was

25   responsible for drafting the fraudulent scripts that were used

JCH7TONS

1    to deceive customers.

2             THE COURT:  I find that the role enhancement for being

3    a manager is appropriate.  Strictly speaking, Mr. Toner managed

4    one or more individuals in connection with this fraudulent

5    scheme.  He was there for some period of time, oversaw the

6    facility there, created scripts which allowed the individuals

7    who worked at the call center to respond to the complaints that

8    were being made in connection with the scheme.  From the

9    Court's perspective it's as straightforward as that, so I do

10   find that that enhancement is appropriate.

11            Any other objection to the calculation, Mr.Villazor?

12            MR. VILLAZOR:  No, your Honor.

13            THE COURT:  In that event, although I am not required

14   to impose a sentence within the guidelines range, I am required

15   to consider that range, and in order to do so I need to do the

16   calculation.

17            Mr. Toner pleaded guilty to a one count superseding

18   information which charged him with conspiracy to commit wire

19   fraud in violation of 18 U.S.C., Section 1343.  He pled guilty

20   to the Section 371 offense.

21            That count carries a base offense level of 6.  An

22   additional six levels are added because the loss amounted to

23   $48,000.  Two more levels are added because the scheme involved

24   more than ten victims.  An additional two levels are added

25   because of the use of sophisticated means.  And an additional

JCH7TONS

1    two levels are added because of Mr. Toner's role as a leader,

2    organizer or manager.  Three levels are deducted for acceptance

3    of responsibility, yielding a total offense level of 15.

4    Because he has one criminal history point, Mr. Toner is in

5    Criminal History Category I.

6           Ms. Zverovich, any objection to that calculation?

7           MS. ZVEROVICH:  No, your Honor.

8           THE COURT:  And, Mr.Villazor, any objection to that

9    calculation?

10          MR. VILLAZOR:  No, your Honor.

11          THE COURT:  In that event, I accept the guidelines

12    calculations in the presentence report, and I find that the

13    Criminal History Category is I, total offense level is 15; that

14    yields a guidelines range of 18 to 24 months.

15          Ms. Zverovich, did you wish to be heard?

16          MS. ZVEROVICH:  Your Honor, just very briefly.  For

17    the reasons set forth in the government's submission, the

18    government believes that a sentence within the guidelines range

19    of 18 to 24 months is appropriate, as is also the

20    recommendation of the probation office, which recommended an 18

21    month sentence.

22          The conduct in this case with which the Court is

23    familiar was extensive.  Customers were defrauded.  The

24    defendant worked with other people to place unauthorized

25    charges on their credit card bills for products that for the

JCH7TONS

1   most part they never ordered and were never shipped to them.

2          The defendant, Mr. Toner played, as I just said, a

3   very important part in that criminal enterprise.  He was

4   managing the call center in Costa Rica where customers would

5   call to report fraudulent activity, and he would generate

6   scripts in order to deceive those customers, and in order to

7   prevent them from calling the credit card companies or the

8   banks in order to report that fraudulent activity, which is

9   what enabled this scheme to continue to operate.

10          We have e-mails, some of which are cited in the PSR,

11   about the defendant's role, proposals that he would make to his

12   coconspirators James Beckish and Joseph Demaria, including

13   things like -- "we have e-mails for various customers so we can

14   use that to say they opted in to something online" in

15   generating a script to respond to their complaints.  Meaning a

16   customer would call, they would say I have a fraudulent charge,

17   and Mr. Toner would instruct other people to tell that person,

18   no, no, no, you actually opted in using this e-mail account, in

19   order to deceive them to think they had opted in and to prevent

20   them from complaining.

21          The conduct went on for a significant period of time.

22   Mr. DeMaria and Mr. Beckish pleaded to a one year conspiracy,

23   and Mr. Toner was managing this call center for at least half

24   of that time period, for six months, which is very significant.

25          In addition to playing that role -- which was really

JCH7TONS

his central role -- he did also have other roles in the

conspiracy.  For example -- and this is I think at PSR

paragraph 17 -- in October of 2013 Mr. Toner sent an e-mail to

Mr. Beckish about obtaining, purchasing credit card numbers

that would then be signed up for charges in order to

fraudulently bill consumers.  What he wrote, while it's not

quoted in the PSR, what he wrote to Mr. Beckish and Mr. Demaria

was "I confirm it's about 3500 records with full info that are

easily accessible and ready to go.  Let me know what we can do

with them, and I can help come up with a retention script as

well -- meaning a script again that would be used to deceive

clients.

         He also communicated with Mr. Beckish and Mr. Demaria

about the websites that were being used as part of the scheme,

and specifically suggested to them that more money should be

put into those websites to make them "look more legit".

         So, Mr. Toner was not on the periphery of this

conspiracy; he was very much in it, and he played a very

important role.  And for those reasons the government believes

that a guideline sentence would be appropriate.

         And I would also note -- and this is something we

referenced in our sentencing submission -- the defendant's

conduct on pretrial release in this case has been rather

troubling.  He on two separate occasions tested positive for

drugs.  Your Honor at one point got a violation report from

JCH7TONS

1    pretrial services, and separately it has come to this office's

2    attention that Mr. Toner is under investigation in the District

3    of New Jersey for a very similar scheme in which he played --

4    allegedly -- according to those allegations -- still just

5    allegations, he has not been charged -- but according to the

6    allegations, he played a very similar role of once again

7    managing a call center type facility where people would call in

8    to report fraud.

9              THE COURT:  What's the nature of that business, if you

10   know?

11             MS. ZVEROVICH:  Your Honor, it relates to -- it

12   relates to time shares.  My understanding of that business is

13   it's a company that operates in Florida and New Jersey that

14   takes in clients who have time shares, and who claim that they

15   were defrauded in some way regarding those time shares, and

16   it's an advanced fee scheme investigation.

17             THE COURT:  Do you know what the status of that

18   investigation is?

19             MS. ZVEROVICH:  I know that in the beginning of this

20   year and in early 2019 the District of New Jersey executed a

21   search warrant at the company, seized a number of documents,

22   and the investigation is ongoing.

23             THE COURT:  And I take it Mr. Toner is no longer

24   working there.

25             MS. ZVEROVICH:  Your Honor, I actually don't know

JCH7TONS

1    that.

2             THE COURT:  OK.

3             MS. ZVEROVICH:  So for all of those reasons, your

4    Honor, I think a guideline sentence in this case would serve

5    the goals of sentencing, it would afford just punishment, it

6    would be important to send a message to this defendant that he

7    can't just continue defrauding people and getting away with it.

8             These crimes, as your Honor knows, are very difficult

9    to investigate, and a message needs to be sent both to

10   defendant and to the community that these crimes are serious

11   and will not be treated lightly.  Thank you, your Honor.

12            THE COURT:  One question for you.  What is the

13   government's view of Mr. Toner's culpability relative to his

14   codefendants and in particular Mr. Witcher?

15            MS. ZVEROVICH:  Your Honor, in the government's view

16   Mr. Toner certainly is less culpable than Mr. Beckish and

17   Mr. Demaria who ran the operation, but he is significantly, in

18   our view, more culpable than Mr. Witcher, again because he

19   exercised a managerial role over a very important portion of

20   this criminal scheme.

21            Mr. Witcher's role in the scheme was just to find

22   people who were willing to put their names on some bank

23   documents in order to open accounts.  Mr. Toner was managing a

24   center where people would call in to report fraudulent

25   activity.  And, in addition to that, he was advising

JCH7TONS

1   Mr. Beckish and Mr. Demaria on important parts of the business,

2   including how to get credit card numbers to be used in the

3   fraud, and including, you know, how to make the website look

4   more legitimate so that the fraud could continue going.  So in

5   our view he is more culpable than Mr. Witcher.

6          THE COURT:  Thank you.

7          Mr.Villazor.

8          MR. VILLAZOR:  Thank you, your Honor.  Your Honor, on

9   behalf of Mr. Toner we would submit that a noncustodial

10  sentence is sufficient but not greater than necessary as a just

11  punishment for Mr. Toner.

12         To address a couple of points raised by the government

13  in the offense conduct.

14         Yes, this was an extensive fraud -- that is certainly

15  not in dispute -- but to characterize Mr. Toner's conduct as

16  very important to it, I think over emphasizes his job title as

17  manager and neglects the salient fact that the call center

18  preexisted Mr. Toner's involvement, and the call center

19  continued to exist after.  He was there only for six months.

20  And the circumstances into which he actually joined this

21  conspiracy was kind of a slow evolving process.  He didn't join

22  it with the sole purpose of defrauding consumers.  He had his

23  own business in Florida which fell apart due to an unfounded

24  Florida investigation, and he lost all of his money in legal

25  fees.  And unfortunately he got hooked up with Demaria and

JCH7TONS

Beckish, childhood friends who invited him to join, and he went to Costa Rica and managed that call center for about six months.

The important part, your Honor -- and particularly when you're considering the need for specific deterrence -- is that Mr. Toner left the call center.  He left it after six months, well before the government started investigating and well before he was arrested in June of 2017.

So, to classify him as very important to the scheme I think overemphasizes his job title.  And certainly he had overt acts in that conspiracy, but his limited role and his salaried role, which was $48,000, certainly places him well below all the coconspirators.

The government talks about other codefendants who were involved like Mr. Witcher and classifies him below that, but Mr. Witcher was incentivized to assist in the conspiracy to the tune of $470,000.  That pales in comparison to Mr. Toner's salaried employment of $48,000.

As to the proffer by the government as to this District of New Jersey investigation, the search warrant was conducted on the business, not on Mr. Toner.  As far as we are aware, he has not been named as a target or a subject, and he has not been violated by pretrial services for any unlawful conduct related to his employment with that District of New Jersey investigation.

JCH7TONS

1          THE COURT:  What insight, if any, can you give me

2    concerning that investigation?

3          MR. VILLAZOR:  I don't have any insight to that, your

4    Honor.  I am only representing Mr. Toner as to the sentencing

5    in this case, so I don't have any insight other than what the

6    government has proffered to the Court.

7          THE COURT:  I appreciate that.  What was Mr. Toner

8    doing in that job, if you know?

9          MR. VILLAZOR:  I believe he it was related to a call

10   center as well, your Honor.  As to the mechanics of it, I am

11   just not familiar with it.  I'm not comfortable and not

12   familiar enough with it to adequately brief the Court on what

13   goes into it.  He is earning a salary, and he is supporting his

14   family, and this is something that he joined well after he left

15   the conspiracy with Mr. Beckish and Mr. Demaria.

16         THE COURT:  Is he working at that business currently?

17         MR. VILLAZOR:  I believe --

18         THE DEFENDANT:  Yes, your Honor.

19         MR. VILLAZOR:  Yes, your Honor.

20         THE COURT:  OK.

21         THE DEFENDANT:  It's --

22         MR. VILLAZOR:  Your Honor, my understanding from

23   Mr. Toner is it's a fee recovery phone system in which they are

24   assisting victims to recover from fraud.  They are fraud

25   victims, and if they can recover then they get paid.  Again,

JCH7TONS

1    I'm sorry, your Honor, I am not really up to speed on what the

2    District of New Jersey investigation is looking at with respect

3    to that business.

4          THE COURT:  So they're working with victims of

5    timeshare fraud?

6          MR. VILLAZOR:  Timeshare fraud, for a fee.

7          THE COURT:  OK.

8          MR. VILLAZOR:  And, your Honor, to the specific

9    deterrence that was raised by the government with respect to

10    this District of New Jersey investigation, again he is not a

11    target or a subject as far as we know.  And as to his conduct

12    in this charged conspiracy, he walked away.  After six months

13    he walked away, before any government investigation started

14    with him, before he was arrested.  And as for a need for

15    specific deterrence, I think it's minimal.

16          I turn your Honor to the 3553(a) factors, which is

17    obviously the strength of our sentencing submission.

18          Mr. Toner -- notwithstanding his admitted criminal

19    actions in this criminal conspiracy -- has been exemplar.  He

20    has led a very troubled life.  He is a product of an abusive

21    stepfather, an abusive father, a mother who was addicted to

22    drugs.  And he has his own addictions, your Honor, that he for

23    the most part has successfully battled.

24          The government has highlighted certainly his

25    violations on pretrial release, and it's an addiction he

JCH7TONS

1    continues to treat, and he has been for the most part

2    successful on that.

3            He has his family, your Honor.  His wife Scarlet, and

4    his daughter Victoria, 15, and his son James, Jr., they are all

5    in court here today to show their support and their love for

6    their father.  I have certainly highlighted, and Scarlet has

7    submitted, I think an important letter for this Court to

8    consider as to the emotional support that Mr. Toner has been

9    for his children and the emotional support he has been to his

10   wife.  And, most importantly, he has been physical support for

11   his wife who has been suffering from various medical issues

12   from a serious fall that she suffered in February of 2018, all

13   which postdate his removal from the criminal conspiracy.  She

14   is in court; her kids are in court.  I want to touch on this

15   delicately, but she is physically unable to manage her

16   household.  Aside from working -- where Mr. Toner is the one

17   who is financially supporting his family -- she is physically

18   unable to brush her hair, or get dressed, or drive, or do the

19   daily things that are needed by any member of the family, and

20   Mr. Toner has taken on that responsibility.

21           I would add, your Honor, that Mr. Toner, he wanted his

22   children here to show how he has accepted responsibility and to

23   each them a lesson -- teach them a lesson of associating with

24   wrong people and making bad choices -- and as a deterrence,

25   it's actually to his children to show the mistakes he has made

JCH7TONS

1    and has admitted up to.  It's an important life lesson that he

2    wants his children to learn.

3            Apart from his family, his immediate yet family, your

4    Honor, you saw the letters that his friends and family

5    submitted.  His sisters who live in Florida, who practically

6    see him as a father figure, are emotionally supportive of him.

7    They couldn't be here today given the travel costs that are

8    involved, but they are a support system that really weigh

9    heavily in favor of Mr. Toner.

10           And I respectfully submit that a noncustodial

11   sentence, a sentence of probation, would be a sufficient

12   sentence for Mr. Toner.  He certainly has accepted

13   responsibility.  He is here to face sentencing, but his remorse

14   and the combination of his limited offense conduct, and the

15   personal history and circumstances of his family background,

16   warrant a sentence of probation.  Thank you.

17           THE COURT:  Thank you, Mr.Villazor.

18           Mr. Toner, you have an absolute right to address the

19   Court before I impose sentence.  Is there anything that you

20   want to say?

21           THE DEFENDANT:  Yes, your Honor.  I would like to

22   apologize to any and all victims that were harmed by my

23   criminal actions and the criminal actions of my coconspirators.

24   Also I would like to apologize to my family, wife and two

25   children for letting them down, failing them as a husband and

JCH7TONS

father.  I made a terrible mistake to take part in defrauding

and stealing from others, and I am prepared to accept the

consequences of my actions.

I'm doing the best to rebuild my life and earn back my

dignity, working full-time to support my family and at home,

trying to be the best husband and father I can.  I respectfully

ask the Court for leniency.  Thank you, your Honor.

THE COURT:  Thank you, Mr. Toner.

In deciding what sentence to impose, in addition to

the sentencing guidelines and the commentary thereto.  I have

considered all of the factors set forth in Section 3553(a) of

Title 18 of the United States Code, including the nature and

circumstances of the offense and Mr. Toner's history and

characteristics.  I have considered the need for the sentence

imposed to reflect the seriousness of the offense, to promote

respect for the law, to provide just punishment for the

offense, to afford adequate deterrence to criminal conduct and

to protect the public from further crimes.

I have considered particularly to this case the need

to avoid unwarranted sentencing disparities among similarly

situated defendants and the need to provide restitution to any

victims of the offense.

Having considered all of these factors, it is my

intention to impose a sentence of three months' incarceration,

followed by three years of supervised release, with the special

JCH7TONS

1    condition that the first three months of supervised release be

2    spent on home confinement, during which Mr. Toner will be

3    allowed to work.

4           I will impose a $100 special assessment.  I will not

5    impose a fine, as I do not believe that he is able to pay a

6    fine.

7           I believe that this sentence is sufficient but not

8    greater than necessary to comply with the purposes of

9    sentencing for the following reasons:

10          I note, as I must, that I do find this to be a very

11   serious offense.  It's an offense with dozens if not hundreds

12   of victims, all of whom were deprived of money in a rather

13   insidious way.  Many of them probably did not know that they

14   were being defrauded for months.  There may be people out there

15   to this day that don't know that they were defrauded.  In the

16   process, Mr. Toner and his codefendants garnered hundreds of

17   thousands -- if not millions -- of dollars for their own

18   purposes.  And all of the individuals who have come before me

19   that I have sentenced in connection with this scheme are

20   people, individuals like Mr. Toner, who were not without

21   talent.

22          Mr. Toner, before his involvement with these

23   individuals, appeared to be a very successful businessman who

24   was earning a very good salary running a business that

25   unfortunately -- and I take him at his word -- was destroyed by

JCH7TONS

an investigation that should not have happened, and he had to
begin again.  And, in doing so, he associated himself with
individuals whom though certainly he knew and knew from his
childhood, he knew were involved in a fraudulent scheme.  He
decided to play an important role -- and I do find that it was
an important role.  Whether the call center was there when he
started or not, whether it was there after he left, he was a
manager. He was directing people in what to say when
individuals would correctly call in to say, you know, I'm being
defrauded, I didn't make these charges, please give me my money
back.  And he would put them off or direct others into telling
them how to put them off.

As I indicated, Mr. Toner was an individual who knew
better, who had been successful in the past and who clearly is
not afraid of doing work, who understands that he has to
support his family and, you know, could have done something
else, an individual that I believe had options and did not have
to follow this.

So, I do find that this is serious conduct for which
some level of incarceration is appropriate for specific and
general deterrence.  However, I do not believe that a sentence
even at the low end of the guideline range is appropriate.

As Mr.Villazor points out, despite his obvious
intelligence, Mr. Toner did not have an easy life growing up.
He had parents who were in many regards absent at best and at

JCH7TONS

1   worst abusive.

2          He had mental health issues that were not adequately

3   treated apparently, and those issues no doubt sprung from that

4   lack of attention early on and to which he has been battling

5   even to today.  So, I do find that some mitigation is

6   appropriate for having had to go through that and then get to

7   the point where he is today.

8          I also find that by all accounts -- I have read the

9   letters that were submitted very carefully -- the people who

10  know him best, those who are closest to him, report that he is

11  a dutiful father and husband and son who was working as hard as

12  he can even now to take care of his family.

13         I do understand that it will be a difficult for the

14  family to be without him for some period of time, but as

15  difficult as this may be for the family, his wife and children

16  to hear this, it's necessary that some period of incarceration

17  be imposed.

18         And, you know, I do impose a period of supervised

19  release that he serve some of that at home and that he be

20  allowed to work, and I do that because of the fact that his

21  family does need him present and needs him working as much as

22  possible.

23         So with that, does counsel know of any legal reason

24  other than what has already been argued as to why the sentence

25  should not be imposed as indicated?

JCH7TONS

1          MS. ZVEROVICH:  No, your Honor.

2          THE COURT:  Mr.Villazor?

3          MR. VILLAZOR:  No, your Honor.

4          THE COURT:  In that event --

5          MS. ZVEROVICH:  Your Honor, just to add, we also do

6     have consent proposed orders of forfeiture and restitution,

7     both in the amount of $48,000 for the Court's consideration.

8          THE COURT:  Do you have them ready for me to execute?

9          MS. ZVEROVICH:  Yes, your Honor.

10         THE COURT:  Mr.Villazor?  Mr.Villazor, did you want to

11    say something?

12         MR. VILLAZOR:  No, your Honor.

13         THE COURT:  Very well.  It is the judgment of this

14    Court that Mr. Toner be sentenced to three months under one

15    count of conviction, to be followed by three years of

16    supervised release, with the special condition that the first

17    three months of supervised release be spent on home confinement

18    with electronic monitoring, during which time Mr. Toner will be

19    allowed to work.

20         The standard conditions 1 through 12 of supervised

21    release will apply, as well as the following mandatory and

22    special conditions.

23         The mandatory conditions are that you not commit

24    another federal, state or local crime; that you must not

25    unlawfully possess a controlled substance; and you must refrain

JCH7TONS

from the unlawful use of a controlled substance and submit to
one drug test within 15 days of release from imprisonment, and
at least two periodic drug tests thereafter as determined by
probation.

The special conditions are that you will participate
in an outpatient program approved by the U.S. Probation Office,
which program may include testing to determine whether you have
reverted to using drugs or alcohol.

You must provide the probation officer with access to
any requested financial information.  You must not incur new
credit charges or open additional lines of credit without the
approval of the probation officer unless you are in compliance
with the installment payment schedule.

You must participate in an outpatient mental health
treatment program approved by the U.S. probation office and
must continue to take any prescribed medications unless
otherwise instructed by the healthcare provider.  And if you
are sentenced to supervision and you move out of the district,
it is recommended that you be supervised by the district of
residence.

You are ordered to pay the mandatory special
assessment of $100, which shall be due immediately.

I will not impose a fine, because I find that you are
not able to pay a fine.  And I will enter the order of
restitution in the amount of $48,000, and consent preliminary

1   order of forfeiture.

2            Are there any open counts?

3            MS. ZVEROVICH:  Yes, your Honor, the government moves

4    to dismiss all the prior indictments and charges against

5    Mr. Toner.

6            THE COURT:  That application is granted.  I take it

7    that there was a waiver of appeal in his plea agreement, Ms.

8    Zverovich.

9            MS. ZVEROVICH:  Yes, your Honor, the plea agreement

10   contains the standard waiver.

11           THE COURT:  Because of that waiver in your agreement

12   with the government, I believe I sentenced you below the

13   stipulated guidelines range.  That effectively means that your

14   right to appeal my sentence is severely restricted.  However,

15   Mr.Villazor, will you assure me that you will promptly and

16   thoroughly discuss with Mr. Toner the effect of the plea

17   agreement on his appellate rights?

18           MR. VILLAZOR:  I will, your Honor.

19           THE COURT:  Do you have any other applications,

20   Mr.Villazor?

21           MR. VILLAZOR:  Yes, your Honor, one, that Mr. Toner be

22   allowed to voluntarily surrender.

23           THE COURT:  That application is granted.

24           MR. VILLAZOR:  And, two, that the Court recommend to

25   Bureau of Prisons that he be housed in a location closest to

JCH7TONS

1    his family.

2              THE COURT:  Where is his family?  What town?

3              MR. VILLAZOR:  Down in south Jersey, your Honor.

4              THE COURT:  I will make that recommendation.

5    Mr. Toner, you should be aware that although I can recommend a

6    location, the Bureau of Prisons doesn't have to follow my

7    recommendation.  They typically try to do so, but please

8    understand that all I can do is recommend.  But I will make

9    that recommendation.  Anything else, Mr.Villazor?

10             MR. VILLAZOR:  No, your Honor.  Thank you.

11             THE COURT:  Ms. Zverovich, anything else from you?

12             MS. ZVEROVICH:  No, your Honor, but we would ask that

13   your Honor set a date by which Mr. Toner will self surrender.

14             THE COURT:  Let's set a date six weeks out,

15   Ms. Rivera.

16             MR. VILLAZOR:  Your Honor, sorry.  With the Court's

17   permission, can we get that three months out?  Mr. Toner has a

18   lot of family obligations to get squared away, and that would

19   give him sufficient time for financial and physical help.

20             THE COURT:  Any objection?

21             MS. ZVEROVICH:  No, your Honor.

22             THE COURT:  Very well.  Three months out, Ms. Rivera?

23             DEPUTY COURT CLERK:  March 17, 2020.

24             THE COURT:  And if you are not designated by that

25   time, Mr.Villazor, just contact chambers, and we will arrange

JCH7TONS

1  for further adjournment if necessary.

2            MR. VILLAZOR:  Yes, your Honor.

3            THE COURT:  Anything else?

4            MS. ZVEROVICH:  Nothing else, your Honor.  Thank you.

5            THE COURT:  Mr.Villazor?

6            MR. VILLAZOR:  No.

7            THE COURT:  Very well.  Then we are adjourned.

8            Mr. Toner, good luck to you, sir.

9                                   - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25